**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| DDR HOLDINGS, LLC, | ) | Civil Action No. _________ |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| SHOPIFY INC., | ) | JURY TRIAL DEMANDED |
| Defendant. | ) | |
| ___________________________________ | ) | |

**COMPLAINT**

DDR Holdings, LLC ("DDR") alleges:

1. DDR is a Georgia limited liability company with its principal place of business in Dunwoody, Georgia. DDR is in the business of developing, managing, and licensing intellectual property for syndicated e-commerce, including related patents and other intellectual property.

2. Shopify Inc. is a Canadian corporation with its principal place of business in Ottawa, Ontario. Shopify has designated a Delaware agent for service of papers for securities purposes. See Exhibit A attached.

3. DDR owns all right, title, and interest in the following three patents-in-suit: U.S. Patent 8,515,825, issued August 20, 2013 (with certificate of correction, attached as Exhibit B), U.S. Patent 9,043,228, issued May 26, 2015 (with certificate of correction, attached as Exhibit C), and U.S. Patent 9,639,876, issued May 2, 2017 (today) (attached as Exhibit D), including the right to sue for any patent infringement.

4. Daniel D. ("Danny") Ross is the managing director of DDR and a co-inventor of the patents-in-suit here. In 1997, Mr. Ross co-founded a company called

Nexchange Corporation with his son, Mr. D. Delano ("Del") Ross, Jr.; Danny became chairman of Nexchange and Del became CEO. Both Rosses and several others who worked at Nexchange are listed co-inventors on the above-listed patents. The above-listed patents stem from a common ancestor application filed September 17, 1999, which in turn claimed the benefit of a provisional application filed September 17, 1998. The Rosses and the other co-inventors assigned the patent rights to Nexchange.

5. Nexchange began operation in Fall 1998, received millions of dollars of venture financing, and at its height employed over 100 people. Nexchange achieved significant early success. Nexchange's "reach" (an Internet term defining the number of potential visitors who saw Nexchange "stores") soared to more than half of all Internet users. Despite its early success, Nexchange failed a few years later, from lack of later-round financing after the bursting of the "Internet bubble."

6. Nexchange began winding down in late 2000. In 2001, as Nexchange had substantially completed the winding down of operations and sale of its assets, Danny Ross acquired the patent rights (then consisting of one unexamined patent application) from Nexchange by agreement with Nexchange's secure creditors in exchange for consideration including Mr. Ross's personal services. In 2003, Danny Ross signed an agreement with Nexchange's creditors by which he providing additional consideration and obtained an acknowledgement that he had completed his duties under the 2001 agreement and thus an acknowledgment of the assignment. Danny Ross then assigned the patent rights to a company he and Del Ross had formed, DDR. Accordingly, DDR owns all the patents listed in paragraph 3 above.

7. In January 2006, DDR sued nine defendants on two patents that are parents to the patents-in-suit here, in Civil Action No. 2-06-CV-00042 in the Eastern District of Texas ("the Texas Suit"). In 2010, DDR amended that lawsuit to add another DDR patent in this family of patents, U.S. Patent 7,818,399, and a tenth defendant. In October 2012, the Texas Suit went to a trial against two defendants, and DDR obtained a jury verdict that the independent claims of the '399 Patent were infringed and were not invalid. The district court later denied a series of defense motions for judgment as a matter of law and entered judgment in June 2013. In December 2014, the Federal Circuit Court of Appeals affirmed the judgment as to the '399 Patent, including holding that the '399 Patent contained patent-eligible subject matter under Section 101 of the Patent Act, that the '399 Patent's claims were not indefinite and thus complied with Section 112, paragraph 2, of the Patent Act, and that the '399 Patent was infringed. *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1259 (Fed. Cir. 2014).

8. After the district court judgment, and with knowledge of the defenses and prior art cited at trial, the Patent Office issued the '825 Patent in suit. After the Federal Circuit affirmance, and with knowledge of its opinion, the Patent Office issued the '228 and '876 Patents-in-suit.

9. The four patents discussed above are related. Specifically, the '876 Patent is a continuation of the '228 Patent, which is in turn a continuation of the '825 Patent, which is in turn a continuation of the '399 Patent.

10. As the Federal Circuit held (referring to the '399 Patent and its parent): "Each of these patents is directed to systems and methods of generating a composite

web page that combines certain visual elements of a 'host' website with content of a third-party merchant. For example, the generated composite web page may combine the logo, background color, and fonts of the host website with product information from the merchant. The common specification of the patents-in-suit explains that prior art systems allowed third-party merchants to 'lure the [host website's] visitor traffic away' from the host website because visitors would be taken to the third-party merchant's website when they clicked on the merchant's advertisement on the host site. The patents-in-suit disclose a system that provides a solution to this problem (for the host) by creating a new web page that permits a website visitor, in a sense, to be in two places at the same time. On activation of a hyperlink on a host website — such as an advertisement for a third-party merchant — instead of taking the visitor to the merchant's website, the system generates and directs the visitor to a composite web page that displays product information from the third-party merchant, but retains the host website's 'look and feel.' Thus, the host website can display a third-party merchant's products, but retain its visitor traffic by displaying this product information from within a generated web page that 'gives the viewer of the page the impression that she is viewing pages served by the host' website." 773 F.3d 1248-49 (citations omitted).

11. DDR settled with all ten defendants in the Texas Suit, some before the trial, one after jury selection, one before Federal Circuit oral argument, and the last on January 30, 2015, after the Federal Circuit opinion. Over time, DDR has reached license agreements with four additional companies without litigation.

12. On January 8, 2016, DDR's counsel wrote to Shopify bringing to Shopify's attention the '399, '825, and '228 Patents, providing Shopify with copies of those patents, and advising that DDR had studied Shopify's "ecommerce platform," and wished to discuss a license. Shopify did not reply.

13. DDR counsel wrote additional letters dated March 22, 2016, and August 16, 2016, asking for the courtesy of a reply. Between those two follow-up letters, DDR's counsel caused at least three voicemail messages to be left with the General Counsel of Shopify.

14. On April 13, 2017, DDR's counsel wrote a letter to Shopify advising of the impending issuance of the '876 Patent, providing a copy of the claims and post-allowance notices from the Patent Office, and inviting Shopify to settle the matter amicably. Again, Shopify did not respond.

15. Shopify infringes claims 1-3, 5-13, 15-20 of the '876 Patent (claims 1 and 11 are independent claims). Shopify infringes claims of the '228 Patent (claims 1 and 9 are independent claims). Shopify infringes claims 1-5, 8-14, and 17-22 of the '825 Patent (claims 1, 11, and 17 are independent claims).

16. Shopify directly and literally infringes the above-described claims through its ecommerce platform. The specific characteristics of Shopify's platform that cause infringement of the asserted patents are as follows: Shopify acts as an "outsource provider" described in the patents. Shopify owns or controls a computer server system that serves displayable web pages with commercial opportunities. Shopify's web pages offer to the public "commerce objects" – *e.g.*, a list with descriptions of products of

various sorts – associated with buying opportunities of a merchant. When Internet visitors activate a link, using a computer (*e.g.*, desktop or laptop) or portable computing device (phone, tablet, etc.) on a source web page controlled by a "host," *i.e.*, a Shopify customer, the Internet visitor's computer is redirected to a URL at which Shopify's server system is accessible. In response to activation of that link, Shopify's server system then serves to the visitor's device instructions for displaying a composite web page. The composite page is dynamically assembled thereafter, depending on information from the source page. Shopify's web pages contain information about the "commerce object" and make the product available for sale to the user. Shopify's server system ensures that many visually perceptible elements that visually correspond to the source page are displayed to the user, such as by directing the visitor's device to download through the Internet certain stored data (*e.g.*, HTML and CSS instructions or image files) defining the visually perceptible elements.

17. Notably, the composite page (that Shopify causes to be served under its "ecommerce platform") has the same overall appearance of a web page of Shopify's customer. Shopify's website touts the "fully customizable" nature of e-commerce sites and brags that it offers "complete control" to customers "over the look and feel of your website" and "full control over the appearance of your site, along with all HTML and CSS coding," while Shopify handles the "complex backend techy details" via Shopify's "platform."

18. Like the DDR '399 Patent described in the Federal Circuit's opinion, the Shopify "ecommerce platform" generates a composite web page that combines certain

visual elements (*e.g.*, logo, background color, and fonts) of a "host" website (a Shopify customer) with content of a merchant, which is not Shopify. As was true for Digital River in the Texas Case, the "host" and the "merchant" are the same (here, Shopify's customer), although products of other merchants can be sold as well. Shopify's system shares the advantage over prior art systems that allowed merchants to "lure the host website's visitor traffic away" from the host website; rather, upon activation of a hyperlink on the host website, instead of taking the visitor to a merchant's website, Shopify's system generates and directs the visitor to a composite web page that displays product information but retains the host website's overall appearance, which gives the viewer of the page the impression that he or she is viewing pages served by the host's website.

19. Each of the following statements related to dependent claims are true in at least some instances: Shopify's server system contains instruction or image files in a memory or storage device coupled to the server. Shopify's system assembling the composite web page is a web server serving the Shopify page. The visually perceptible elements include URLs or hyperlinks referencing the customer's website or specific pages thereof. The commerce object may include a "catalog" with subsidiary web pages, *e.g.*, pages for different product types within a product or different products within a category. The Shopify system allows users to search for products matching specific parameters, including through a browser on the user device, and including within the "catalog" when available. The commerce object may refer to a multitude of products of a merchant. Shopify's computer system facilitates automatic payment to

Shopify's customer. Shopify's websites include URLs that when activated place the data representing the commerce object into a virtual shopping cart. Shopify's websites accept billing information and facilitate payment for the purchased goods or services. Shopify's use of the visually perceptible elements causes the composite web pages to appear as though they were generated by their customers' websites. Shopify's web page is "branded" to look like its customer's web page.

20. Although DDR considers Shopify's infringement to be direct infringement, in the alternative DDR alleges that Shopify also either directly infringes or intentionally, knowing of the patents, induces infringement, by directing its subcontractors such as hosting providers or content delivery networks to serve the web pages of the sorts described above, and by providing in its marketing materials and above-referenced websites encouragement and direction to its customers to place links in their pages customized to interface with Shopify's servers and to operate under Shopify's "ecommerce platform." Also in the alternative, DDR alleges that by serving pages in combination with its customer's servers and their user's computers, Shopify contributes to infringement of its customers or its customers' users by providing access to the above-described server system, which forms a material part of the invention that has no substantially non-infringing use, knowing that its components were designed for an infringing system.

21. Shopify's website and webpages formed by the infringing server system are publicly accessible over the Internet and available to Internet users in the State of Delaware, and Shopify offers its service to customers in Delaware, including through a

contract posted online and accessible by Delaware potential customers. Shopify has provided services to customers in this district, one of which is FiftyThree, Inc., a Delaware corporation, and facilitated the sales of goods and services of Shopify's customers to a number of residents of this district. Shopify has earned a significant quantity of revenue from transactions having connection with the United States effectuated through the Internet, through operation of the above-referenced and infringing websites and programs.

22. This civil action for patent infringement arises under the patent laws of the United States, 35 U.S.C. §1, *et seq*., and more particularly 35 U.S.C. §271.

23. This Court has subject-matter jurisdiction over this case under, at least, 35 U.S.C. §281 and 28 U.S.C. §§1331, 1332, 1338(a), 2201, and 2202.

24. This Court has personal jurisdiction over Shopify because it has chosen Delaware for its registration (Exhibit A); because, under at least 10 Del. C. §3104 and the United States Constitution, Shopify conducts a substantial, systematic, and continuous business of soliciting, offering, and selling services in this judicial district, from which it derives substantial revenue; and because this action arises from Shopify's commission of patent infringement in this judicial district by, among other things, serving and intending to serve Delaware affiliates by offering Shopify services to customers, business affiliates, and partners located in Delaware, and by assisting both Delaware and non-Delaware customers and affiliates to serve web pages to Delaware users.

25. This District is a proper venue to resolve this case under, at least, 28 U.S.C. §§1391 and 1400. DDR is bringing action against other defendants simultaneously.

26. Notwithstanding awareness of DDR's patent rights, and notwithstanding the judgment in the Texas Case and opinion of the Federal Circuit holding the related '399 Patent infringed and not invalid, Shopify continued or began activities falling within the scope of at least one claim of the patents-in-suit, without a justifiable basis for believing that the claims are invalid or not infringed, and declined to respond to reasonable and polite inquiries concerning the patents. Shopify's patent infringement is willful.

27. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, DDR hereby respectfully requests a jury trial on all issues and claims so triable.

WHEREFORE, DDR respectfully requests judgment as follows:

A. A judgment that Shopify has infringed (or in the alternative contributorily infringed or actively induced others to infringe) the three patents-in-suit;

B. A judgment that Shopify's infringement of the patents-in-suit is willful;

C. Orders preliminarily and permanently enjoining Shopify, its officers, directors, servants, managers, employees, agents, successors, and assignees, and all persons in concert or participation with them, from infringing, contributorily infringing, or actively inducing others to infringe the patents-in-suit.

D. An award, pursuant to 35 U.S.C. §284, to DDR of all damages sufficient to compensate for Shopify's infringement of the patents-in-suit, but no less than a reasonable royalty for use made by Shopify of the patented invention, together with pre-judgment and post-judgment interest and costs, for the time periods from the issue date of each infringed patent through the time of award;

E. An award of increased damages, pursuant to 35 U.S.C. §284, in an amount not less than three times the amount of actual damages awarded to DDR, by reason of Shopify's willful infringement of the patents-in-suit.

F. An award of reasonable attorneys' fees, pursuant to 35 U.S.C. §285, as this is an exceptional case.

G. An award to DDR of such other relief as this Court deems just and proper.

Dated: May 2, 2017

Respectfully submitted,

FARNAN LLP

/s/ Brian E. Farnan

Brian E. Farnan (Bar No. 4089)
919 North Market Street, 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
Facsimile: (302) 777-0301
bfarnan@farnanlaw.com

*Attorneys for Plaintiff*

Of Counsel:

Louis J. Hoffman
LOUIS J. HOFFMAN, P.C.
7689 East Paradise Lane, Suite 2
Scottsdale, Arizona 85260
Telephone: (480) 948-3295
Facsimile: (480) 948-3387
Email: louis@valuablepatents.com