```
                    UNITED STATES DISTRICT COURT
                 DISTRICT OF DELAWARE (WILMINGTON)

DDR HOLDING, LLV,            .     Case No. 1:17-CV-00501-ER
                             .
          Plaintiff,         .
                             .     U.S. Courthouse
     v.                      .     844 North King Street
                             .     Wilmington, DE 19801
SHOPIFY INC.,                .
et al.,                      .
                             .
          Defendants.        .
                             .     December 4, 2017
. . . . . . . . . . . . . ..        Time Unknown

            TRANSCRIPT OF MOTION TO DISMISS HEARING
           BEFORE HONORABLE EDUARDO C. ROBRENO
               UNITED STATES DISTRICT JUDGE

APPEARANCES:

For DDR Holdings:          LOUIS J. HOFFMAN, ESQ.
                           LOUIS J. HOFFMAN, P.C.
                           7689 East Paradise Lane, Suite 2
                           Scottsdale, AZ 85240

For Shopify Inc.,          MICHAEL J. MCNAMARA, ESQ.
et al.:                    MINTZ, LEVIN, COHN, FERRIS, GLOVSKY
AND                        POPEO, P.C.
                           One Financial Center
                           Boston, MA 02111

                           BRETT GOVETT, ESQ.
                           NORTON ROSE FULBRIGHT, LLP
                           2200 Ross Avenue, Suite 3600
                           Dallas, TX 75201


Audio Operator:            NELSON MALAVE

Transcriber:               UBIQUS REPORTING, INC.
                           61 Broadway, Suite 1400
                           New York, NY 10006
                           212-346-6666
                           Email: infousa@ubiqus.com



                Proceedings recorded by electronic sound
           recording, transcript produced by transcription service.
```

## I N D E X

PAGE

PROCEEDINGS                                          3

OPENING STATEMENTS


WITNESS FOR THE PLAINTIFF


EXHIBITS                                    ID.   EVD.

```
 1              COURT OFFICER:  The United States District Court for

 2    the Eastern District of Pennsylvania is now in session.  The

 3    Honorable Eduardo will bring out the docket.

 4              THE COURT:  Good morning.  Please be seated.

 5              MALE VOICE:  Good morning, Your Honor.

 6              VARIOUS VOICES:  Good morning.

 7              THE COURT:  So we had scheduled a Motion to Dismiss

 8    hearing, but we were advised on December 1st that the Motion to

 9    Dismiss for failure to State a Claim was mooted by the

10    Plaintiff filing -- or by amended complaint.  Is that -- is

11    that correct?

12              MR. HOFFMAN:  Yes, Your Honor.  We received a call

13    from Shopify, the Defendant that had filed the motion, saying

14    that they would -- proposing to withdraw their motion if we

15    would make some minor amendments to the Complaint and we agreed

16    to do that, and the parties basically settled the issue.

17              THE COURT:  Okay.  Fine.  So, that -- that takes

18    care of the Motion to Dismiss.  Now, in the meantime, there was

19    a motion for Judgment on the Pleadings that was filed on

20    November 30th.  And I appreciate that's not before the Court

21    today on the merits, but as a procedural matter let's see where

22    we go with -- with that.  Okay.  Who filed the motion?  Is that

23    you, Mr. Covett [phonetic]?

24              MR. GOVETT:  Your Honor, Govett.  Would you like me

25    to stand nearer?
```

1           THE COURT:  Yeah, please.

2           MR. GOVETT:  Your Honor, good morning.  Brett Govett.

3           THE COURT:  Is it G?  G-O?

4           MR. GOVETT:  Yes, Your Honor.  G-O; it's like Lyle

5   Lovett but with a G.

6           THE COURT:  Okay.  I said Covett.  Okay.  Very good.

7           MR. GOVETT:  Yes, sir.  Govett.  That's how I always

8   tell everybody because --

9           THE COURT:  Good.

10          MR. GOVETT:  -- they know who Lyle Lovett but they've

11  never heard of any Govetts so, but in any event, we represent

12  Priceline, Booking.com, TicketNetwork and Tourico.  So we're

13  the ones who filed the motion on the Judgment of the Pleadings

14  on three of the four patents-in-suit.

15          The one patent that was not addressed, vis-a-vie the

16  '101 patent in action on this federal circuit, has a decision

17  on that patent, so we'll address that later in another fashion

18  outside of 101.

19          I believe Shopify, our co-defendant, we do not

20  represent, is represented by the gentleman to my right over

21  here, they may file a separate pleading with respect to all of

22  the patents inclusive of the '399 patent.

23          And the basis of the 101, if that's what I'm thinking

24  the Court's getting at, is the claims are broader than the '

25  patent.  They're much broader in fact and the hook that the

1  federal circuit identified for saving the `399 patent is

2  conspicuously absent.

3          THE COURT:  Okay.

4          MR. GOVETT:  It's absent.

5          THE COURT:  Okay.  No, I'm not there yet.  I --

6          MR. GOVETT:  Okay.

7          THE COURT:  -- I'm a step behind you.

8          MR. GOVETT:  Okay.

9          THE COURT:  Number one, as a matter of patent

10 practice, how do you square your motion with the requirement on

11 the Rule 54(b) that you're seeking judgment to have lessened

12 all of the claims?

13         MR. GOVETT:  On the pleadings?

14         THE COURT:  Yes.

15         MR. GOVETT:  Well, it would be on the -- I believe

16 the federal circuit has authority.  It can move on for a motion

17 for judgment on the -- on the -- procedurally the way we did,

18 and I understand the question.  I appreciate that.

19         With respect to 101 issues on those, we're just

20 simply following the federal circuit guidance on that but I do

21 appreciate the question.

22         THE COURT:  Well, better to give me an answer.

23         MR. GOVETT:  Because if it's not --

24         THE COURT:  In other words, you say 54(b) doesn't

25 apply because the federal circuit says it doesn't apply?

1          MR. GOVETT:  Well, that -- I -- my understanding was

2   that we can move to disregard to have the claims invalidated on

3   --

4          THE COURT:  Well, you can fix this by showing that

5   there's no just reason for delay, but -- but you didn't address

6   that at all.

7          MR. GOVETT:  I understand, Your Honor.  I'll take a

8   look at --

9          THE COURT:  I mean I -- I -- I -- I don't pretend to

10  have expertise on patent procedure so I'm relying on you.

11         MR. GOVETT:  I understand, Judge.

12         THE COURT:  This may be the way that it's done in the

13  patent -- the patent bar.  That's what I want to find out,

14  whether or --

15         MR. GOVETT:  That's -- that's --

16         THE COURT:  -- this is an issue that we have to

17  address.

18         MR. GOVETT:  And that's the understanding.  I will

19  look at the precise question.

20         THE COURT:  Yeah.

21         MR. GOVETT:  And -- and provide a little supplemental

22  briefing to the Court if that's okay.

23         THE COURT:  Okay.  Good.  Second question is your def

24  -- your Judgment on the Pleadings, are you alleging that this

25  will be with prejudice?

```
 1                    MR. GOVETT:  Yes.

 2                    THE COURT:  Okay.

 3                    MR. GOVETT:  Yes.

 4                    THE COURT:  So, if the Judgment on the Pleadings may

 5     be cured by amendment then it would be proper to grant it; you

 6     understand that?

 7                    MR. GOVETT:  Yes.

 8                    THE COURT:  Okay.  Okay.  So, you folks want to move

 9     to litigation sort of out front before we do any discovery or

10     motion practice, et cetera?

11                    MR. GOVETT:  Yes, because if -- if three of the four

12     patents are gone, then --

13                    THE COURT:  Right.  And then apparently we may have

14     four patents before the Court in the Judgment of the Pleadings.

15                    MR. GOVETT:  We may.  I'm not exactly certain --

16                    THE COURT:  Right.

17                    MR. GOVETT:  -- what our co-defendants move -- or

18     intend to move on.

19                    THE COURT:  Okay.  Good.  Thank you for that

20     clarification.

21                    MR. GOVETT:  Thank you.

22                    THE COURT:  Let me hear then from -- is it Mr.

23     McNamara?

24                    MR. McNAMARA:  Yes, sir.

25                    THE COURT:  Okay.  You want to tell me about your
```

1   plans here so that we can plan accordingly.

2   　　　　MR. McNAMARA:  Yes, Your Honor.  So Shopify intends

3   to move under 12(c) for dismissal of all the claims against it,

4   which are two of the four patents that are issued.

5   　　　　THE COURT:  You're going to do that?

6   　　　　MR. McNAMARA:  Yes, sir.

7   　　　　THE COURT:  Okay.

8   　　　　MR. McNAMARA:  And that motion should be on file.

9   　　　　THE COURT:  Now how is that different than what was

10  pending before?

11  　　　　MR. McNAMARA:  The -- before we were confused.

12  　　　　THE COURT:  Okay.

13  　　　　MR. McNAMARA:  Because --

14  　　　　THE COURT:  Join the club.

15  　　　　MR. McNAMARA:  The problem was that our system

16  doesn't have these three parties that are required by the

17  claims of the patent.  And the federal circuit found that that

18  was part of the reason why they thought there would be 101

19  protection.

20  　　　　And instead, that's not how our system works.  And

21  DDR recognized that and there were some statements about that

22  in the complaint, but then there were other ones that seemed to

23  think that they were asserting against the three-party system

24  which doesn't really match what we do.

25  　　　　And so we moved under Twombley to have them clarify

1  that, and they graciously did last week.  And so now we're, in

2  taking the file under 12(c) where we shouldn't, to dismiss all

3  the claims against two of the patents that are asserted against

4  us, and there are only two.

5          And it's separate from the co-defendant's motion

6  because our pleadings weren't closed in time to join their

7  motion.  And we're also in a very different position because

8  the only websites we have are websites that we host and are

9  just online merchants that sell their own goods.  There's no

10 third-party products that are sold through those merchants.

11         And so that puts us in a very different position and

12 it also really un-does the federal circuit's decision on 101 as

13 to the '399 patent.

14         THE COURT:  Now, you're going to then challenge all

15 four claims, right?

16         MR. McNAMARA:  So there's four patents.

17         THE COURT:  Yes.

18         MR. McNAMARA:  And about 72 claims --

19         THE COURT:  Okay.

20         MR. McNAMARA:  -- of the patents.  We're going to

21 challenge the two patents which are the basis for every legal

22 claim in their complaint asserted.

23         THE COURT:  Okay.  So, that wouldn't raise a 54(b)

24 issue because you're -- you're seeking judgment as to all

25 claims?

 1          MR. McNAMARA:  That's right, sir.

 2          THE COURT:  Okay.  So, let me see if I understand

 3    this.  The Defendant's motion for Judgment on the Pleadings

 4    that Mr. Govett has puts before the Court three of the patents.

 5          Your motion puts before the Court the fourth patent

 6    as well as all of the ones that he has raised?

 7          MR. McNAMARA:  No, sir.  I'm sorry.

 8          THE COURT:  No?

 9          MR. McNAMARA:  There was a misunderstanding.

10          THE COURT:  Okay.

11          MR. McNAMARA:  There are four patents asserted

12    against my co-defendants I believe.

13          THE COURT:  Right.

14          MR. McNAMARA:  Including this '399 patent which was

15    before the federal circuit before.  There are only two patents

16    that are asserted against Shopify, which doesn't include --

17    which don't include '399 patents.

18          THE COURT:  Okay.

19          MR. McNAMARA:  And so the claims were amended in

20    those more recent patents, the two that are against Shopify,

21    which makes them broader and doesn't include the protection

22    that the federal circuit found as to the claims that it had

23    said we're entitled to go --

24          THE COURT:  But are the legal issues going to

1   overlap?

2            MR. McNAMARA:  The legal issues will overlap.

3            THE COURT:  Well, otherwise we could be having

4   inconsistent findings, right?

5            MR. McNAMARA:  That there could be -- there could be

6   inconsistent findings which then we would already have that

7   filed -- that on file within the next week, two weeks --

8            THE COURT:  Okay.

9            MR. McNAMARA:  -- so that the Court can consider both

10  motions at the same time.

11           THE COURT:  So we will consider the motions globally

12  --

13           MR. McNAMARA:  Yes, sir.

14           THE COURT:  -- at that point.  Okay.  Good.  Okay.

15  Thank you.  Let me hear from the Plaintiff, see what -- what

16  you -- I think you're Mr. Hoffman?

17           MR. HOFFMAN:  Yes, I am.

18           THE COURT:  Okay.

19           MR. HOFFMAN:  Thank you, Your Honor.  Good to meet

20  you.

21           THE COURT:  Good.  Mr. Farnan is getting to be a

22  regular member of our bar now.  Yeah.

23           MR. HOFFMAN:  I think he actually is a member of the

24  bar.

25           THE COURT:  Yeah.  Okay.  Go ahead.

1        MR. HOFFMAN:  I fell off there.

2        THE COURT:  We see him every week.

3        MR. HOFFMAN:  No, I do understand.  Now, I'm the one

4   confused.

5        THE COURT:  Yes.

6        MR. HOFFMAN:  Our complaint has four patents.  They

7   are in a family which you have continuation patents.  The first

8   earliest patent is the '399 patent which is the one that the

9   federal circuit was not subject to a 101 issue.  The reasoning

10  the federal circuit provided is applicable to all the families,

11  and so the patent office found.

12        The later three patents are the ones that were the

13  subject of Mr. Govett's motion.  Those same three patents, not

14  two but all three of those patents, are asserted against

15  Shopify.  So I don't know where the two patents being asserted

16  against his client are that that was the part that confused me.

17        THE COURT:  It could maybe do -- maybe we could -- do

18  you understand that?

19        MR. McNAMARA:  No.  I may -- I may have misspoken and

20  I apologize if I did.

21        THE COURT:  Okay.

22        MR. HOFFMAN:  Right.

23        MR. McNAMARA:  I know the '399 is not asserted against

24  my client.

1          MR. HOFFMAN:  That's right.

2          THE COURT:  But all of -- but all of the three are?

3          MR. McNAMARA:  But the other three may be and I may -

4   -

5          THE COURT:  Okay.

6          MR. McNAMARA:  -- be and I may have misspoken and I

7   apologize.

8          THE COURT:  Okay.

9          MR. HOFFMAN:  Right.  So, the -- so the -- so the

10  same three patents that are the subject of Mr. Govett's motion

11  are the same three that are asserted against Shopify.

12         THE COURT:  Right.

13         MR. HOFFMAN:  And are presumably the same three that

14  they're going to move on presumably on the same grounds --

15         THE COURT:  Right.

16         MR. HOFFMAN:  -- although they may have a slightly

17  different reason or twist for why they want to do that.

18         THE COURT:  Plus '399.

19         MR. HOFFMAN:  No.  Well, no, they -- since '399 was

20  not asserted against -- this is what confused me about --

21         THE COURT:  I'm sorry.

22         MR. HOFFMAN:  -- Mr. Govett's statement --

23         THE COURT:  Minus '399, yes.  Exactly.  Yeah.

24         MR. HOFFMAN:  That's what confused me by Mr. Govett's

1    statement because if '399 is not asserted against Shopify

2    clearly they're not moving on that one.

3              THE COURT:  Right.

4              MR. HOFFMAN:  So '399 is going to be in the case

5    regardless, you know, if in fact this motion were well-founded,

6    which it's not, the -- the patents -- there would be no case

7    left against Shopify but there would still be a case against

8    all the other defendants.  So --

9              THE COURT:  So how would you suggest that we proceed?

10             MR. HOFFMAN:  Well, normally we would prefer to have

11   a unified motion from all defendants.  However, in this

12   particular case, that ship has sailed so I would prefer that

13   they file their one-on-one brief promptly, Shopify that is, and

14   that we be given the opportunity to file our consolidated

15   response.

16             THE COURT:  And resolve the legal --

17             MR. HOFFMAN:  To deal with both --

18             THE COURT:  -- issues --

19             MR. HOFFMAN:  -- issues.

20             THE COURT:  -- out front and then depending upon how

21   that shakes out, we would then reconvene and plan out the rest

22   of the litigation?

23             MR. HOFFMAN:  Well, no.  I -- I think we came all the

24   way to Philadelphia and spent a lot of time doing a scheduling

1    order in order --

2              THE COURT:  Okay.

3              MR. HOFFMAN:  -- to establish the --

4              THE COURT:  But you -- can you do that --

5              MR. HOFFMAN:  -- case.

6              THE COURT:  -- without having the legal guidance as

7    to what's going to survive and what is not?

8              MR. HOFFMAN:  I think so, Your Honor.  These are all

9    related patents and it's clear at this point that, Shopify

10   aside, that the case is going to proceed against the other

11   defendants on at least one patent.  Whether it's one patent or

12   four related patents is not -- does not make much of a

13   difference.

14             There's a lot of talk about there is a lot of claims

15   here that -- I don't want to presume that you know the

16   difference between independent and dependent --

17             THE COURT:  Right.

18             MR. HOFFMAN:  -- claims, but basically in patent law

19   you have an independent claim and then a bunch of variations

20   that are secondary, that are optional features.  And the large

21   number of claims that they talked about are simply counting the

22   independent claims.  So what you really have is eight

23   independent claims among -- among these four patents.  Three of

24   them are simply apparatus counterparts of method claims so that

25   the same limitations apply.

1          So these are highly related.  There's not -- there

2    are differences obviously among the five different independent

3    claims of the four patents, but there's -- they're not huge --

4    of huge significance, but certainly I think we can go forward

5    with setting a schedule for the case, setting procedures, and

6    we know that there's going to be at least some of the case left

7    after this Motion to Dismiss.

8          THE COURT:  So you're saying that the scope of

9    discovery doesn't depend upon the course rulings on the Motion

10   for Judgment on the Pleadings?

11         MR. HOFFMAN:  I think that's largely true.  There may

12   be some issues that would come up in the discovery that would

13   apply to the '399 patent and not the others.  I'm not saying

14   there are no differences between them, but the procedures,

15   things like dates and so forth, I don't think there should be -

16   -

17         THE COURT:  Well, we're trying to avoid --

18         MR. HOFFMAN:  -- much of a difference.

19         THE COURT:  -- the, perhaps duplicative discovery

20   that somebody would have to come back because --

21         MR. HOFFMAN:  Right.

22         THE COURT:  -- you didn't do this or that or -- or

23   what it would turn out --

24         MR. HOFFMAN:  I don't see it like that.

25         THE COURT:  -- like you wasted their time in doing

1    that.  And your -- your judgment is that, although there may be

2    some differences, they're not such that would warrant a delay

3    in discovery?

4              MR. HOFFMAN:  I think that's right.  And, Your Honor,

5    I don't know how fast you can decide a motion for Judgment on

6    the Pleadings.  But presuming that that could be decided

7    quickly, I don't think it ought to slow the schedule at all

8    because, you know, the -- the, you know, this -- this -- this

9    can be decided in the meantime --

10             THE COURT:  Well, now --

11             MR. HOFFMAN:  -- and it turns out that something --

12             THE COURT:  -- while you're here looking at the --

13             MR. HOFFMAN:  Yeah.

14             THE COURT:  -- 26 of the report, it seems that you --

15   you largely agree on what needs to be done and you differ

16   somewhat on the scope but not as significantly, for example,

17   prior art references six as opposed to 12, or the dates of --

18   you agree on the sequence of how the discovery should proceed

19   but have some differences as to the dates but that the

20   differences are not -- are not really major.

21             What's -- what drives your schedule?

22             MR. HOFFMAN:  I think the major difference with

23   regard to the schedule is -- and the most important date is the

24   date that Defendants will disclose to us what they think the --

25   why they think this -- these patents are invalid, which we will

1   call the invalidity contentions.  That's really the -- one of

2   the first dates on the calendar.

3               THE COURT:  That's the Defendants to serve invalidity

4   contentions and the --

5               MR. HOFFMAN:  Other stuff.

6               THE COURT:  And your -- you want January and they

7   want March.

8               MR. HOFFMAN:  Right.  And, Your Honor, the Delaware -

9   - well, the -- I want you to understand that this case was

10  litigated before and give you a thumb-nail sketch of that

11  history.

12              Aside from the fact that these Defendants had two

13  years to figure out whether to locate art and to figure out

14  whether they think that these patents are invalid based on

15  prior art, and aside from that half a year ago that, you know,

16  when we sued, all of the Defendants except for Shopify hired

17  Mr. Govett.

18              Mr. Govett litigated for a decade over these patents

19  from 2006 -- I shouldn't say 'these patents.'  The '399 patent.

20  From 2006, the year it issued, he provided a very large set of

21  invalidity contentions in 2006.  We --

22              THE COURT:  You mean in this case?

23              MR. HOFFMAN:  No, no.  I'm talking the prior case.

24              THE COURT:  When you say 'prior,' you mean the Texas

25  --

1                    MR. HOFFMAN:   The Texas --

2                    THE COURT:   -- case?

3                    MR. HOFFMAN:   -- litigation, yes, Your Honor.

4                    THE COURT:   Okay.

5                    MR. HOFFMAN:   The -- he and his co-defendants

6    provided a large amount of prior art in 2006.   We presented

7    that to the patent office and the patent, the '399 patent, was

8    re-examined successfully so they said that that prior art

9    wasn't any good.

10                   Then in 2010/2011, this same counsel produced 3,400

11   pages of invalidity charts such -- covering 130 references.

12   Their co-defendant then sent an extra disk right before trial

13   with 6,000 files and 1,500 file folders on a disk supposedly

14   showing the state of the art.

15                   He then tried the case using an expert that had an

16   expert report that was 345 pages long on invalidity and 1,336

17   paragraphs of text.   We then tried the case.   He used only one

18   reference as a primary reference, so this is not an instance in

19   which the Counsel doesn't know the prior art.

20                   We sent out claim charts six weeks' ago to all the

21   Defendants and the District of Delaware ruled normally.   We

22   were sent initial disclosure materials to peruse everything so

23   that we are -- so we were done with our process.

24                   The District of Delaware rule is one month from the

25   time of the Plaintiff's charts.   We're offering to give them

1    two and a half months from the time of the Plaintiff's charts,

2    which would be one month from today plus a week for the

3    holidays.

4            And their answer is they want five months from the

5    time we serve the charts, and worse, that they want to provide

6    that on the same day that they ask us to choose claim terms for

7    claim construction.  So that we won't have time to review what

8    could be another multi-thousand-page document.

9            THE COURT:  Mm-hmm.

10           MR. HOFFMAN:  So that's the -- so that's the most

11   important date that controls the others.

12           THE COURT:  Do the others sort of follow --

13           MR. HOFFMAN:  Well, not --

14           THE COURT:  -- that particular day that is in

15   proportion at that point?

16           MR. HOFFMAN:  Kind of.  I mean it's not exact.  There

17   are some dates on which we just flat out agreed with, like --

18           THE COURT:  Yeah.

19           MR. HOFFMAN:  -- the mediation date and early

20   mediation and in -- in March.  But that -- that the -- the

21   bottom line is their schedule is about three months behind ours

22   and it kind of largely turns on that.

23           There are some other disputes that I could, you know,

24   rate back and identify with the schedule to kind of highlight

25   for Your Honor if you wish but --

1          THE COURT:  Yes, go ahead.

2          MR. HOFFMAN:  There is a -- there's a date that the -

3   - relating to the expert reports down the road where we had

4   proposed that if they have to amend their infringement

5   contentions and narrow prior art, that they might as well send

6   their opening invalidity expert report at the same time because

7   it doesn't do us any good to have two of those items early.

8          And they said no.  You know, we felt that put, you

9   know, a couple weeks of needless slog in the schedule.  And

10  they proposed to separate the dates, you know, despite us

11  saying that we didn't really --

12         THE COURT:  Well, where are we going on this --

13         MR. HOFFMAN:  -- would like to have it early.

14         THE COURT:  -- on this --

15         MR. HOFFMAN:  This is after the Markman hearing on

16  the -- there's a date for the -- for the -- on the last page,

17  there's a date for the expert reports and the amended

18  invalidity contentions.

19         And our proposal is the same date, you'll see in the

20  -- may I approach the Clerk?  I could point out the --

21         COURT CLERK:  Of course.  Of course.

22         MR. HOFFMAN:  All right.  Being the -- yup, right

23  here. This one.  This one.  This one and this one.

24         COURT CLERK:  Now when you say the same thing as the

25  previous -- all right.

1          MR. HOFFMAN:   So we ask that they produce the expert

2     report on the same day as their amended contentions and they

3     want to separate those dates even though they're both in their

4     control.

5          THE COURT:   Okay.

6          MR. HOFFMAN:   Those are the -- with regard to simply

7     the dates, Your Honor, those are the -- I think the two major

8     issues that where the parties differ.   The result of those two

9     makes a three month or so difference in the trial schedule and

10    --

11         THE COURT:   Where -- where is the Markman hearing?

12         MR. HOFFMAN:   The Markman hearing is on -- hearing on

13    claim construction --

14         THE COURT:   Yeah.

15         MR. HOFFMAN:   -- the third item on the -- on Page 4.

16         THE COURT:   Okay.

17         MR. HOFFMAN:   So that -- that difference is largely a

18    difference based on the initial point that I mentioned about

19    the -- when the invalidity contentions get served.

20         THE COURT:   Okay.   Any other issues on --

21         MR. HOFFMAN:   On --

22         THE COURT:   -- on --

23         MR. HOFFMAN:   On Schedule 11, no.

24         THE COURT:   Right.

25         MR. HOFFMAN:   As you pointed out, as you observed,

1    Your Honor, there's differences on a number of references and

2    things like that which we can, you know, I would be happy to

3    address if you wish.  I don't know you want to run this

4    proceeding.

5            THE COURT:  Well, let's -- let's try to finish this

6    off first, okay?  Let's see.  Mr. Govett, what's your view of

7    this -- of the proposed schedule?  What drives your position?

8            MR. GOVETT:  Yes, Your Honor.  We thought it was

9    pretty reasonable to ask the -- I have until March 20th and I

10   think that's the trigger that is driving everything that

11   Counsel for the Plaintiff mentioned.

12           There's 73 claims.  There's three new patents.

13   Obviously that Court has ruled on the -- on the 101 issues on

14   the three patents by that point in time.  That might narrow the

15   case, but I'm not anticipating that.

16           The Motion to Dismiss is 30-some pages.  It's -- and

17   there's some issues in there that I'm sure the Court will want

18   to spend some time with, but we thought it was reasonable.

19           Essentially what the Plaintiffs have tried to do here

20   is say "I know there's some schedule in place, but I'm going to

21   send you -- voluntarily I'm going to send you all these claims

22   charts and so forth and I'm going to set the schedule myself."

23           And so it's a little self-help on their part which --

24           THE COURT:  Yeah.

25           MR. GOVETT:  -- we don't think that's a --

1          THE COURT:   Now these dates of course -- well, okay.

2   So according to the Plaintiff, we should set dates anyway

3   regardless of what the Court does with the Motion for Judgment

4   on the Pleadings, do you agree with that?

5          MR. GOVETT:   One thing that I need to inform the

6   Court --

7          THE COURT:   Yeah.

8          MR. GOVETT:   -- and we've mentioned this with a

9   caveat.   I don't want to dodge your question but let me just

10  tell you this and then I'll answer your question.   I apologize

11  for this, Your Honor.

12         THE COURT:   Yeah.

13         MR. GOVETT:   In Pages 9 and 11 we do intend to file

14  inter partes review proceedings.   We will file -- our intention

15  is to file inter partes review on the '399 patent by no later

16  than January 15th.

17         Now, is that set in stone?   Pretty much.   Why January

18  15th?   Because the fees go up at the patent office on that date

19  and so we're trying to get ahead of the increase in fees as I'm

20  sure you can appreciate, and so that's on the '399.

21         So we will have some activity with respect to all

22  four of the pending patents that are against my clients, and so

23  I want to inform the Court of that.

24         But we don't presume that the Court will stop the

1  case and so, assuming the Court does not stop the case, because

2  I practice in Texas and most often stays are not granted upon

3  the -- just the initiation of the IPR.  You have to say a

4  rejection, you know, when the Court or the institution and then

5  a -- then, you know, if they institute it and they reject some

6  of the claims but simply the filing often does not institute a

7  stay.

8           Now up here, it could be different, you know, if the

9  Court wants to stay the case upon the filing.  And I believe

10 that our co-defendant, I'll let them speak, but I believe that

11 our co-defendant Shopify also intends to seek inter partes

12 review on the patents that are asserted against them.  But that

13 does not concern the '399.

14          We have that issue on the '399 and I can easily

15 represent to the Court that we will -- that we are -- our

16 intention is to file for inter partes review on that patent.

17          Now your question was what about the schedule.  Your

18 Honor, we were ordered to prepare a schedule to come in and

19 discuss with the Court, so yes, we did obviously of course do

20 as we were ordered to do.

21          But I would ask that if the Court does not delay the

22 proceedings to see what happens with respect to the 101 issues

23 and with respect to our intended inter partes review which we,

24 again, intend to file by January 15th, that we do have the

1 additional time of three months in there because of the

2 magnitude of the claims that are asserted; 73 claims.  That's a

3 lot of claims.

4   THE COURT:  Well, but the argument -- Plaintiff's

5 argument is that they're new but they're not new to you.

6   MR. GOVETT:  Couldn't disagree more.  Here's why.

7   In the first case, number one, I think I -- I

8 appeared at one deposition.  We had a number of co-defendants

9 in that case.  I came in at the end.  I tried the case and the

10 case that my client was -- was accused of the patent -- the

11 patent that my client was accused of infringing was invalidated

12 in the federal circuit.

13   We were only accused of infringing one patent.  I had

14 no exposure to the '399 patent.  Our co-defendant was accused of

15 infringing the patent -- the patent was invalidated as well as

16 the '399 patent.

17   Yes, they are related, but in terms of getting into

18 the nuts and bolts of the '399 patent, didn't get into it.

19 Didn't have to, because we weren't accused of infringing.  And

20 of course when you go read the federal circuit opinion, they

21 say that.

22   That they explain that, that the prior art that was

23 at issue -- now do I believe that that art will invalidate the

24 '399 patent?  Yes.  But it's primarily an on-sale public use

1  type prior art offense which was exhibited to the jury.

2          One of our consultants came in.  He had an old Apple

3  MacIntosh and he loaded the prior art software on to it, and he

4  gave a demonstration to the jury of how it worked.  And it was

5  exactly in line with what the Plaintiff's claimed was

6  infringement and what their claims read on.

7          And the jury split the baby.  They held the damage

8  number extremely low and the federal circuit, no, these claims

9  are invalid.  And my client wasn't even present at oral

10  argument.  They got out because we had been sued on some later

11  patents so they got out of the case merely by incorporating by

12  reference our brief.  The federal circuit invalidated the

13  claims of the '572 patent.

14          But as far as the '399 patent and all these later

15  patents, we didn't have anything to do with those because they

16  issued later and there's 73 claims that are at issue.

17          And so that's why -- and I think there's no dispute

18  about who was taking the lead.  The Fitch and Richardson law

19  firm had Hotels.com and some of the other defendants -- co-

20  defendants in that case and they settled a week or two before

21  the trial.  I always believed that would happen, so we were

22  ready to step in and try the case which is what happened.

23          But that's in -- and then again, the three later

24  patents that we filed for 101 on, they were not an issue then.

25  So I hope that gives you the complete picture, Your Honor, of -

1   -

2          THE COURT:  Well, now if -- if we were to -- well, we

3   have to have your co-defendant file a Motion for Judgment on

4   the Pleadings and Counsel says that will be in a couple of

5   weeks.  Then we would have to have a Plaintiff's Response.  I

6   don't know.  How much time would you need for that?

7          MR. HOFFMAN:  A couple weeks.

8          THE COURT:  A couple of weeks.  So that would be --

9   let's say a month from now.  That puts us into early January.

10  If you're going to file a reply, it may be seven days for that.

11  That puts us at what?  About January 11th.  So the Court

12  doesn't actually get the case until January 11th which is more

13  than a month from now.

14          I don't know when we would then issue an opinion on

15  this complicated matter.  So, any deadlines would have to run

16  from January.

17          MR. GOVETT:  I understand.

18          THE COURT:  Okay.  And they would be probably --

19  well, we would -- we would try to adjust these dates to -- to -

20  - does -- you begin here in October.  Obviously --

21          MR. GOVETT:  Yes.

22          THE COURT:  -- that date has gone by.

23          MR. GOVETT:  Yes.  Well, that's the date -- Your

24  Honor, that's the date they sent us all the information --

25          THE COURT:  Yeah.

1          MR. GOVETT:  -- and said, "Hi, here it is."  And just

2     right around that time, Your Honor, that's the January 15th

3     date that I mentioned for our filing --

4          THE COURT:  Right.

5          MR. GOVETT:  -- of inter partes review because it's

6     public knowledge.  The fees go up and they go up considerably,

7     and so the question is do we file on just the one patent?  It's

8     $7,500 in fees which doesn't sound like a lot of money but when

9     you multiply it by four you're up to $30,000.

10         And so the question is do you -- do you file on the

11    one or do you file on all four?  And of course if you file on

12    all four you're at $30,000 in fees simply to the patent office

13    and that's something that, you know --

14         THE COURT:  Are you going to file before January 15th

15    or after January 15th?

16         MR. GOVETT:  Definitely on the three nine -- on the

17    '399  the plan is to file before to save the additional costs in

18    the patent filing fees.

19         THE COURT:  Okay.

20         MR. GOVETT:  And I -- I do not want to represent to

21    the Court, there's not a decision made on the other three

22    patents, but the decision is to -- to try to beat the deadline

23    on the '399.

24         THE COURT:  Okay.  Now, the other point that Counsel

1   raised was the amended invalidity contentions.

2              MR. GOVETT:   Yes.

3              THE COURT:   What's your view of that?

4              MR. GOVETT:   Yes.  Well, those would be triggered,

5   Your Honor, on the -- on the -- we have it in here December

6   4th, the deadline.  But the point of these deadlines is

7   typically, as I'm sure the Court's familiar with, those are

8   coming off of a Markman decision.  And so oftentimes you see 60

9   days after a Markman decision, 90 days after a Markman decision

10  and so forth.

11             And these dates were put in here to provide some

12  cushion in terms of the time of the hearing until that could

13  be, because there was some discussion about, well, we did -- do

14  we trigger it upon, you know, receipt.  And everybody said no,

15  let's just do it on firm dates as just as best as --

16             THE COURT:   Well, let me ask you this.

17             MR. GOVETT:   Yes.

18             THE COURT:   As a matter of practice and I will ask

19  the Plaintiff's Counsel as well.

20             MR. GOVETT:   Yes.

21             THE COURT:   Should we have these dates after the

22  Markman hearing which seemed to be speculative or --

23             MR. GOVETT:   Yes.

24             THE COURT:   -- illusory, or should we have a

25  scheduling order that will take us through the Markman hearings

1  and then, depending upon what happens there, we would do the

2  scheduling of the other key events?

3          MR. GOVETT:   That's what I would prefer, Your Honor,

4  because I don't know what's going to happen with the Markman

5  hearing.           And the reason I see that as a better

6  vehicle for managing the case is because you wait for a Markman

7  ruling, the Markman ruling does not come out before the

8  deadline for these extra reports and invalidity contentions.

9  You would have to come back to the Court and say "Could we have

10 some extra time?" or you have to serve them.

11          You have to serve them if you've not got an answer on

12 that, contingent upon the fact that when you get -- you receive

13 the ruling on the claims constructions you're going to have to

14 update them again because potentially because some things could

15 change.

16          THE COURT:   Okay.

17          MR. GOVETT:   And so the better course is what you

18 just suggested to -- to prepare a schedule if -- if we're going

19 to proceed through Markman.

20          THE COURT:   Mr. Hoffman, what do you think on that

21 particular point?

22          MR. HOFFMAN:   Your Honor, that's highly amusing

23 because that was what I had originally proposed to Defendants

24 and they said no, they wanted the dates set afterwards.

25          THE COURT:   That's because you wanted it.

1          MR. HOFFMAN:  I had -- I guess.

2          THE COURT:  Yeah.

3          MR. HOFFMAN:  So --

4          THE COURT:  So you have no objection to --

5          MR. HOFFMAN:  No, I mean we can --

6          THE COURT:  -- proceeding in that fashion?

7          MR. HOFFMAN:  -- easily set a status scheduling

8    conference after the Markman hearing and redo the rest of the

9    dates.

10         THE COURT:  Okay.

11         MR. HOFFMAN:  I did want to make just a brief remark

12   to clarify.  I was not suggesting that Mr. Govett personally

13   was involved in the prior art although he did do his -- and his

14   firm did part of the prior art invalidity statements in both

15   two thousand -- in both 2006, 2010 and 2011.  But he has access

16   to all of the prior art including all these detailed materials.

17         THE COURT:  Okay.

18         MR. HOFFMAN:  He indicated that he was planning --

19   his clients were planning on filing IPRs, which are prior art-

20   based motions, in the patent office to invalidate the patents.

21   And if he has prepared his papers to the patent office to

22   invalidate the patents, then he can also --

23         THE COURT:  That's to the ones he's going to file by

24   January 15th.

25         MR. HOFFMAN:  Then he can also disclose the prior art

1   to us in the invalidity contentions because they're both

2   relating to prior art.

3            So I don't understand the notion that he needs more

4   time all the way until March to file his invalidity contentions

5   in this case but he can file it with the patent office the same

6   day we -- more or less that we asked him --

7            THE COURT:  No.  Let me --

8            MR. HOFFMAN:  -- to file.

9            THE COURT:  -- ask you this.  Is it -- is there any

10  law, either in the circuit or federal circuit, I'm sorry either

11  as a matter of practice in Delaware or in the federal circuit,

12  concerning the number of prior art references that should be

13  allowed?

14           MR. HOFFMAN:  There is not, Your Honor.  There is a

15  practice in Texas that we adopted that says it's a -- it's

16  called a phase limits quarter that the courts have, you know --

17  as you know they deal with a lot of patent cases and they

18  establish certain procedures.

19           THE COURT:  Right.

20           MR. GOVETT:  Mr. Govett practices down there.  Our

21  previous case was down there.  And so I had suggested that we

22  adopt a similar order because parties have found it useful to

23  reduce the number of claims which we have already done, and

24  conversely, to reduce the number of prior art references.

25           And on the prior art references side, the Court has a

 1   presumed order for sort of the average case that has the 12

 2   references but it doesn't have this footnote that allows for

 3   additional -- additional accommodations.  And then the -- and

 4   then the --

 5            THE COURT:  You mean this is a local rule?

 6            MR. HOFFMAN:  It's a local practice.  It's kind of

 7   like Judge Stark has a form order --

 8            THE COURT:  Yeah.

 9            MR. HOFFMAN:  -- and so does the judges in Texas.  So

10   there's a standard form order, but the order has footnotes in

11   it that says the parties should confer and reduce the number of

12   patent references to the minimum that are considered to be

13   necessary so that there isn't surprise at trial.

14            THE COURT:  Well, for example, here DDR no more than

15   six; the Defendant 12 prior art references --

16            MR. HOFFMAN:  And no more than 40 overall, Your

17   Honor.

18            THE COURT:  I mean, these are numbers out of the air,

19   right?  I mean --

20            MR. HOFFMAN:  Yeah.  Well, the -- the --

21            THE COURT:  I mean why not 11 or why not 13?  I mean,

22   I just find it that -- that the exercise of discretion doesn't

23   seemed to be informed by either law or prior precedent here.

24            MR. HOFFMAN:  It's kind of a matter of practice and

25   the judges in Texas have sort of felt like people don't need --

1    you know, a dozen references to --

2              THE COURT:  Okay.

3              MR. HOFFMAN:  -- to invalidate claims, especially

4    when they're related.  But the -- the normal approach is a

5    dozen per patent, but then you get more if they're unrelated

6    patents.  Here there are multiple patents but they're all

7    related so they're the same specification, similar claims.

8              Mr. Govett's client in Texas, the previous case, was

9    accused of infringing a broader patent that was invalidated as

10   he said about the federal circuit.  The jury disagreed with

11   him, the judge disagreed with him, but the federal circuit

12   reversed.

13             And since that was a patent that was not particularly

14   relevant to the other defendant, we kind of didn't waste our

15   oral argument too much dealing with it.

16             So, anyway, he has experience in invalidating the

17   broader patents and knows what the prior art is intimately, and

18   I think the point is that he can -- he'd be in a -- he and his

19   clients can be in a position as can Shopify to use the basis of

20   that knowledge and the informations available to them from the

21   previous litigations.

22             The prior art is out there and known, and it's a

23   matter of what they decide to use and --

24             THE COURT:  Okay.

25             MR. HOFFMAN:  -- we'd like them to tell us what

1    they're planning on using.   Remember, they used one patent in

2    the previous case for the independent claims, so I'm asking one

3    reference only, not -- not, you know, that they need 6 or 12.

4    No one tries a patent case with 12 references.

5            THE COURT:   Now, you would like the Court to

6    consolidate the cases and the Defendants would like to

7    coordinate the cases.   Am I missing something here or --

8            MR. HOFFMAN:   This is another oddity.   We received a

9    call from defense counsel proposing -- saying that they were

10   planning on filing a motion to consolidate the cases.

11           THE COURT:   For pretrial purposes?

12           MR. HOFFMAN:   And -- and -- for pretrial purposes,

13   and would we agree?   And we said, yeah, we would.   We think

14   that ought to be in the scheduling order; you don't need to

15   make a separate motion on it.   What does Shopify think, and by

16   the way, what do you think the difference is between

17   coordinating and consolidating?

18           THE COURT:   So the effect would be that a filing on

19   the master case or the lead case would be deemed to be a filing

20   in all four cases?

21           MR. HOFFMAN:   Right.   And that --

22           THE COURT:   And that discovery taken in the lead case

23   will be discovery in all cases.   The Court's ruling in one case

24   would be a ruling on the others.

25           MR. HOFFMAN:   Right, but --

1          THE COURT:  So is there a difference between

2    coordinate and consolidate?  I guess the rule says consolidate

3    would be --

4          MR. HOFFMAN:  Well, I -- I -- that's the exact

5    question I asked.

6          THE COURT:  Yeah.

7          MR. HOFFMAN:  -- what's the difference between

8    coordinate and consolidate and they didn't answer.  We went

9    through three scheduling conferences and -- not scheduling

10   conferences, excuse me.  Discovery conferences.

11         THE COURT:  Yeah.

12         MR. HOFFMAN:  And this issue was not raised.

13   Everyone seemed to be comfortable.  Then we received an edit

14   from the Shopify people suggesting coordinated instead of

15   consolidated, and then an hour before the report is filed, the

16   other defendants changed their position from our -- from the

17   one they had asked before and asked us to agree to.

18         So as far as I'm concerned, if the principles, Your

19   Honor, described are implemented and if the parties are

20   supposed to be filing individual briefs in normal course, as a

21   side rather than as a, you know, multiple briefs from multiple

22   parties, I don't really care what you call it.  I don't know

23   what the proper term is or --

24         THE COURT:  Okay.

25         MR. HOFFMAN:  -- what the difference is.

1              THE COURT:  I understand that.

2              MR. HOFFMAN:  So we really don't have a petition on

3      that I guess.

4              THE COURT:  Okay.  I think that's -- very good.  Okay.

5      Thank you.  Let me ask Mr. McNamara, any -- what's your

6      thoughts on this scheduling?  Are you from Texas as well or --

7              MR. McNAMARA:  No.  I'm from Massachusetts.

8              THE COURT:  Okay.

9              MR. McNAMARA:  So a little different; a little

10     colder.

11             THE COURT:  Okay.

12             MR. McNAMARA:  So for the schedule issue, the

13     schedules mostly run on a kind of a model patent schedule in

14     Delaware, and that schedule kind of has these tiered dates that

15     start from this conference and then go into, you know,

16     identification of accused products and accused patents.

17             Then we produce more textbook documents.  Then they

18     produce infringement contentions, then we do invalidity

19     contentions.  And the amount of time between those two things

20     is three months from this scheduling conference to about when

21     the infringement contentions are due.

22             And so that March date was meant to kind of embrace

23     that three month period because it's not just about getting the

24     infringement contentions and then putting in our invalidity

25     contentions.

1          THE COURT:  So you -- you've -- so your defend --

2    your view is the same as the other defendants?

3          MR. McNAMARA:  As to the March date, that's right.

4    Now, I -- I -- our view is a little different because I would

5    like to stay technical discovery on the merits for a freedom of

6    an invalidity if the 101 matter is decided.

7          THE COURT:  Yeah.

8          MR. McNAMARA:  Because we think that 101 matter will

9    remove those three patents that they have against Shopify.  All

10   the patents against Shopify in the case, and then we won't have

11   to go through the burden of that technical discovery.

12         We would be all fine with doing damages discovery in

13   the meantime to see if there's a way to settle this case before

14   we get into the -- into the merits of it.  But as to the

15   merits, so invalidity contentions, discovery on the core

16   product, production of softwares, doing all of that stuff would

17   be pushed off until the 101 matters are decided.

18         THE COURT:  Okay.  Well, I guess -- and I have a

19   question about the Delaware practice, and I see you have an

20   early -- early mediation and also -- well, let me finish with

21   you and I'll go back to the claims on that -- on that issue.

22         So what would you like to do?  What would -- how

23   would you like to schedule?  What kind of scheduling order

24   would you like to emerge from here?

25         MR. McNAMARA:  We would like a scheduling order that

```
 1  defers setting firm schedule until after the 101 matters are
 2  decided.   And then set in kind of relativistic dates that are
 3  along the lines of our proposed schedule up to the claim
 4  disruption here.
 5              THE COURT:   Okay.   Good.   That's your basic position?
 6              MR. McNAMARA:   Yes, sir.
 7              THE COURT:   Yeah.   Okay.   Good.   Thank you.
 8              MR. McNAMARA:   Should I address --
 9              THE COURT:   Go ahead.   Yes.
10              MR. McNAMARA:   -- address -- Should I address the
11  prior art references issue?
12              THE COURT:   Yeah, sure.
13              MR. McNAMARA:   Okay.
14              THE COURT:   Yeah.
15              MR. McNAMARA:   And before we get off schedule, I'm
16  sorry I'm --
17              THE COURT:   Yeah.
18              MR. McNAMARA:   So coordination versus consolidation -
19  -
20              THE COURT:   Yes.
21              MR. McNAMARA:   -- the reason for the change was we
22  understood that the other defendants were going to file a 101
23  motion ahead of this conference.   We didn't want to be
24  consolidated into a single case because then we'd have --
25              THE COURT:   Okay.
```

1           MR. McNAMARA:   -- a 12(c) motion on file and we

2    wouldn't be able to anticipate or have our say in that.   And

3    that's when -- and that's why the shift to coordination as

4    opposed to consolidation.

5           THE COURT:   But now that wouldn't be a problem?

6           MR. McNAMARA:   Well, right now we would still like to

7    file our own independent --

8            THE COURT:   Right.

9           MR. McNAMARA:   -- 12(c) motion, and it still, when we

10   started thinking along those lines, we're in fundamentally

11   different reads, right?   The patents are asserted against

12   certain types of systems for our co-defendants and very

13   different systems for ours.   And so there's going to be some

14   divergence in the --

15          THE COURT:   So what does coordinate means?   Is that

16   somewhere in the rules?

17          MR. McNAMARA:   Coordination means all of the -- all

18   of the --

19          THE COURT:   Yeah.

20          MR. McNAMARA:   -- the deadlines would be the same,

21   which would reduce the burden of the Court.   However, some of

22   the motions would not necessarily be consolidated under a

23   single heading.

24          THE COURT:   Okay.

25          MR. McNAMARA:   So that, you know, maybe there's two

1    different claim construction briefs that come in from

2    defendants because they're concerned with different claim

3    constructions, different positions on what those claim terms

4    need to mean, partially because the systems that we have are

5    very different, I believe, than the other defendants.

6            But we haven't done discovery yet so maybe I'm wrong

7    on that, but that's why we wanted the coordination instead of a

8    formal consolidation.

9            THE COURT:  Okay.

10            MR. McNAMARA:  The -- now, to -- to prior art.

11   That's where I'm going to shift to, the prior art issue, for a

12   moment.

13            One reason why January 15th versus March, the middle

14   of March, and I don't mean to speak for my co-defendant, but

15   the invalidity contentions embrace things like prior art

16   systems which are much more complex than just prior art

17   references like patents or publications.

18            And so being able to put together invalidity

19   contentions on those patents from publications is a little bit

20   easier, so you can file an IPR and load it faster than you can

21   file invalidity contentions that have a much broader scope.

22   And so delaying those invalidity contentions makes sense in

23   that particular rubric.

24            Now, we are fine with limiting the number of

25   invalidity references, right?  I don't necessarily want to

1    serve on the other side 4,000 pages of invalidity charts

2    covering thousands of references.  I think that's wasteful and

3    usually done just to confuse people.

4              But the number that was proposed, which is a first

5    set of kind of 12 references against each patent and then later

6    a set of six, is a little too small for Shopify because our

7    systems are very different than the other defendants we

8    believe.

9              We have this read on the patents that says they're

10   two-party systems and that's a difference in the prior art, and

11   they're much more voluminous than a prior art than the three-

12   party systems.

13             THE COURT:  Okay.

14             MR. McNAMARA:  And so we were looking to expand that

15   number so that Shopify could make sure to put forward the

16   invalidity references that could support its position.  And so

17   that's why we wanted to expand that number and essentially

18   double it.

19             You know, it was somewhat random to say it's 12.  I

20   agree that that's sort of a number pulled out of the air, but I

21   think that we can probably put together, you know, a reasonable

22   invalidity contentions with 24 references where Shopify would

23   have enough space to put together its proposed invalidity

24   contentions.

25             THE COURT:  Okay.  Well, thank you, Mr. McNamara.

1          Let me go back here to Plaintiff.  As a matter of

2    practice as well and, Mr. McNamara mentioned about doing

3    damages, et cetera.             First, what is the status of any

4    negotiations as among the parties here and the date of early

5    mediation, et cetera?  And -- and maybe -- maybe this we'll do

6    off the -- off the record here.  So we'll be off the record

7    now.  Mr. Hoffman?

8          [END Courtroom 15A_20171204-

9    1009_01d36ce7fc644030.wma]

10         [START Courtroom 15A_20171204-

11   1109_01d36cf04d75e840.wma]

12         THE COURT:  …briefing on the Motion for Judgment on

13   the Pleadings along the lines that I indicated before.  I don't

14   want to repeat it because I will probably contradict myself, so

15   whatever I said that's what's going to be in the written order.

16         Two, we're going to then issue a scheduling order.

17   And I'll go back and--and--and--and try to reconcile some of

18   the things that happened here today.

19         And three, we are going to then ask the parties to

20   submit to the Court within 14 days a name or names of

21   individuals who may be consider that.  Now, I suppose in doing

22   that you will need to check with the individuals.  I'm not sure

23   how you want to do that.  Their availability and supposed

24   rates, et cetera.  Let's see.  Mr. Hoffman, how do you think we

25   should -- we should do that?

1          MR. HOFFMAN:  Your Honor, I neglected to introduce

2     the client, DDR.  This is Danny and Dell, Danny Ross and Dell

3     Ross who --

4          THE COURT:  Okay.

5          MR. HOFFMAN:  -- are two of the inventors and wife

6     Queenie.

7          THE COURT:  Okay.  Welcome.

8          MR. HOFFMAN:  And they have been -- Dell is a

9     Whartman graduate and is very experienced in business and has

10    been more than happy to be reasonable in settlement.  We've not

11    taken firm positions on it must be, you know, anything.  We've

12    simply said --

13         THE COURT:  Well, again, I don't -- I don't really

14    care.

15         MR. HOFFMAN:  Yeah.  I just wanted to --

16         THE COURT:  Yeah.

17         MR. HOFFMAN:  -- make sure that the picture's --

18         THE COURT:  I'm trying to set a vehicle whose results

19    are --

20         MR. HOFFMAN:  Right.

21         THE COURT:  -- relevant to me.

22         MR. HOFFMAN:  -- with regard to the mediators, I

23    agree with Your Honor --

24         THE COURT:  Yeah.

25         MR. HOFFMAN:  -- that there are people out there

1      nationally who --

2                THE COURT:  Are familiar with this field?

3                MR. HOFFMAN:  -- are familiar with patent cases.

4                THE COURT:  Okay.

5                MR. HOFFMAN:  And -- and with mediating patent cases.

6                THE COURT:  Have you had anybody appointed in any of

7      the cases --

8                MR. HOFFMAN:  Every case that I've dealt with there

9      has been mediators appointed.  Some I liked, thought were more

10     effective than others.  But I think that --

11               THE COURT:  How about you, Mr. Govett?  Have you had

12     --

13               MR. HOFFMAN:  -- what we ought --

14               MR. GOVETT:  Once.

15               MR. HOFFMAN:  Yeah.

16               THE COURT:  Okay.

17               MR. GOVETT:  But I think you -- your -- was your

18     question period in cases or in this case?

19               THE COURT:  Well, not in --

20               MR. HOFFMAN:  No, in cases.

21               THE COURT:  -- not in this case, no, no.  No.  In --

22     in -- in --

23               MR. GOVETT:  I have --

24               THE COURT:  -- cases that may be have some relation

25     to the issues involved here.

```
 1                    MR. GOVETT:  Lots of mediators in --

 2                    THE COURT:  So -- so this should not then be a -- an

 3       insurmountable obstacle for you -- the two of you to agree on -

 4       -

 5                    MR. HOFFMAN:  No, that's exactly --

 6                    THE COURT:  -- two or three names.

 7                    MR. HOFFMAN:  That's exactly what I was going to say.

 8                    THE COURT:  And perhaps even one name, but --

 9                    MR. HOFFMAN:  Right.

10                    THE COURT:  -- that will be fine.

11                    MR. HOFFMAN:  We can -- we can speak with -- over the

12       course of the next several weeks and see if we can agree on a

13       name.

14                    THE COURT:  Yeah.

15                    MR. HOFFMAN:  If not, maybe we can appoint a --

16                    THE COURT:  Well, I want it --

17                    MR. HOFFMAN:  -- well, we can suggest some and then

18       have the Court at that point --

19                    THE COURT:  Well, I want it more quickly than that.

20       I'd like to have this in 14 days.

21                    MR. HOFFMAN:  Yes, Your Honor.  And I --

22                    THE COURT:  Okay.

23                    MR. HOFFMAN:  Yes, that's what I'm saying, Your

24       Honor.

25                    THE COURT:  Okay.
```

1          MR. HOFFMAN:  Well, I think within that time we can -

2  -

3          THE COURT:  Let me get Mr. McNamara in here too.

4          MR. MCNAMARA:  Yeah.  No.  I'm -- I'm happy with

5  appointing a mediator.

6          THE COURT:  Yeah.

7          MR. MCNAMARA:  And the March 10th deadline works just

8  because we've really just started talking numbers and --

9          THE COURT:  Okay.

10         MR. MCNAMARA:  -- until we get to a point where we

11  have had numbers where DDR has provided us with kind of an idea

12  of numbers,  we've provided them with an idea kind of revenue

13  based, it's really kind of pointless.

14         THE COURT:  Yeah.

15         MR. MCNAMARA:  We're a public company so they can

16  find that out themselves but we'll provide them with those

17  numbers.

18         As to the names, you know, sometimes they're in

19  cases; sometimes they're not in cases.  But when cases that got

20  resolved, they're usually involved.

21         THE COURT:  Yeah.

22         MR. MCNAMARA:  And so we're happy to get one

23  involved.  If you want three names, one per party, that's fine.

24  We can do that.

25         THE COURT:  Well, I'd like you to try to agree on --

1          MR. McNAMARA:  Okay.

2          THE COURT:  -- on -- on the person.  Let me just say

3  something else.  Their availability is also important.

4          MR. McNAMARA:  Yeah.  They --

5          THE COURT:  There may be some great people, but if

6  they're so great they're probably busy so --

7          MR. McNAMARA:  Yeah.  They're at least -- they're --I

8  apologize for talking over you.

9          THE COURT:  Yeah.

10          MR. McNAMARA:  I mean they're usually booked out a

11  month to two --

12          THE COURT:  Yeah.

13          MR. McNAMARA:  -- in advance depending on the

14  particular mediator.  The last case we just kind of dealt with

15  a mediator where we tried to -- to book him and it was a two-

16  month period before he was available.  Luckily a day freed up

17  when we could do it.

18          THE COURT:  Okay.

19          MR. McNAMARA:  But before we put forward any names,

20  we'll make sure that there's availability.

21          THE COURT:  Okay.  Okay.  Anything else before we go

22  back on the record?

23          MR. HOFFMAN:  I have one other point to a -- I can

24  get it on the record.

25          THE COURT:  Yeah.  Let's go on the record.  We've --

1    we've -- let's complete our discussion on that, on settlement,

2    and we'll go back on the record now on scheduling and -- for

3    the case.

4              MR. HOFFMAN:  Your Honor, with regard to the

5    settlement issue, in order to do it effectively they need to

6    see our --

7              THE COURT:  Well, that would be up to the mediator,

8    what they need to see and not see.

9              MR. HOFFMAN:  I -- okay.

10             THE COURT:  Yeah.

11             MR. HOFFMAN:  I think that the Defendants and I think

12   -- and correct me if I'm wrong, but I believe they're willing

13   to agree that the following information needs to be exchanged.

14             Number one, we need to provide them with their --

15   with our previous licenses.  And number two, they need to

16   provide us with their sales information structured in a

17   particular way.

18             THE COURT:  Okay.

19             MR. HOFFMAN:  So, and we in turn need a protective

20   order in place in order to do that.  That's the one other thing

21   I wanted to add to Your Honor's --

22             THE COURT:  Well, submit it.  A protective order is

23   by agreement of the parties and it should be, you know,

24   specific enough but not a blanket one.

25             MR. HOFFMAN:  Correct.

1            THE COURT:  And I don't think that should be a

2    problem.

3            MR. HOFFMAN:  So we have made --

4            THE COURT:  As to what you should need to exchange,

5    I'm not going to get involved in that.  You know what you need

6    to exchange.

7            MR. HOFFMAN:  Right.

8            THE COURT:  And you'll do that by agreement or the

9    mediator will get involved in that.

10            MR. HOFFMAN:  Yeah, sounds good.

11            THE COURT:  Mr. Govett, please.

12            MR. HOFFMAN:  Thank you, Your Honor.

13            THE COURT:  Let's -- we're back on the record now.

14    Mr. Govett?

15            MR. GOVETT:  Yes.  Thank you, Your Honor.

16            On the -- on the schedule that you mentioned when we

17    were off the record, I just wanted to -- to emphasize to the

18    Court in terms of the invalidity contentions we would

19    respectfully the additional time that we set forth for this

20    reason.

21            Those contentions are not, as Mr. McNamara mentioned,

22    they're not simply patents in printed publications which are

23    the only items that you can use at the patent office to

24    invalidate.

25            It's a different ball of wax when you start talking

1    about systems because you have to patch together a system from

2    numerous different sources and this system is what was used in

3    the last case.

4              Now, do I have all that from the last case?  Of

5    course.  But I still have to go out and look for other system

6    art for -- and I've got 73 claims that are asserted against my

7    clients, and so I have to do that for all 73 different claims.

8    And to say, oh, well, you can do it --

9              THE COURT:  Well, you've started already, haven't

10   you?

11             MR. GOVETT:  I've started on some of it.  I've

12   started on --

13             THE COURT:  Okay.

14             MR. GOVETT:  -- the '399.

15             THE COURT:  Okay.

16             MR. GOVETT:  And you've got to start somewhere and so

17   --

18             THE COURT:  Okay.

19             MR. GOVETT:  And so the -- obviously I'm prioritizing

20   and so that's why I need the additional time, Your Honor, in

21   terms of for the contingents and we thought it was very --

22             THE COURT:  Okay. I think we are --

23             MR. GOVETT:  Okay.

24             THE COURT:  -- we are on the same page.

25             MR. GOVETT:  Thank you.

1           THE COURT:  And hopefully going in the same

2    direction.

3           MR. HOFFMAN:  I'm sorry.  I'm looking for the

4    question -- let him --

5           THE COURT:  Yeah.

6           MR. HOFFMAN:  Are there -- do you have any further

7    questions for me on the --

8           THE COURT:  Nothing further.  Mr. McNamara, anything

9    further from you?

10          MR. McNAMARA:  No, Your Honor.

11          THE COURT:  Mr. Hoffman?

12          MR. HOFFMAN:  Just -- just one brief comment, Your

13   Honor.  The first option in Delaware, does that stop within 30

14   days of the time that they receive the materials that we

15   provided them so --

16          THE COURT:  Right, you mentioned that the rules --

17          MR. HOFFMAN:  Yeah.  So --

18          THE COURT:  -- are provided there.

19          MR. HOFFMAN:  -- the -- the -- the notion that they

20   need more time in order --

21          THE COURT:  Yeah.

22          MR. HOFFMAN:  -- to do things that are normally done

23   in patent cases, you know, systems and all that stuff, anyway.

24          THE COURT:  Okay.  Very good.  Okay.  Well, thank

25   you.  We'll get some written order out for you.

1           MR. GOVETT:  Thank you, Your Honor.

2           MR. HOFFMAN:  Thank you.

3           THE COURT:  Take care.

4                     *  *  *  *  *

# C E R T I F I C A T I O N

We, Karen D. Schiff and Ubiqus, Inc., court approved transcribers, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of our ability.

Karen D. Schiff

_____

Karen D. Schiff

_____

    DATE:  December 10, 2017